```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/4/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

NEIL McNAUGHTON,

                    Plaintiff,

                    -against-

BILL de BLASIO, as Mayor of the City of New
York, WILLIAM BRATTON, as
Commissioner of the New York Police Department,
DETECTIVE JACKSON of the NYPD Computer
Crimes Unit, DETECTIVES JANE AND JOHN DOE
1-20 of the NYPD, OFFICERS JANE AND JOHN
DOE 1-20 of the NYPD, LAURA McNAUGHTON,
THE CITY OF NEW YORK and the NEW YORK
POLICE DEPARTMENT

                    Defendants,

-------------------------------------------------------------x

14 Civ. 221 (KPF) (RLE)


AMENDED
VERIFIED COMPLAINT


JURY TRIAL DEMANDED


Plaintiff Neil McNaughton, complaining of the defendants, alleges as follows:

1. This action is brought for damages pursuant to 42 U.S.C. Sections 1983, 1985; 28

U.S.C. Sections 2201, 2202; and the First, Fourth and Fourteenth Amendments to the United

States Constitution.


2. Jurisdiction is predicated upon 28 U.S.C. Sections 1331, 1343, and U.S.C. Sections

1983, 1985, and the First, Fourth, and Fourteenth Amendments to the United States

Constitution. In addition, the court is respectfully requested to assume pendent jurisdiction over

the related state claims. A substantial part of the events giving rise to the claim occurred in the

Southern District of New York.. Thus, venue is appropriate under 28 U.S.C. Section 1391(b).

3.  This action seeks redress for the deprivation of plaintiff's constitutional and civil rights.  In addition, certain related state claims under the common law of the State of New York are asserted.

## PARTIES

4.  Plaintiff Neil McNaughton, a retired lawyer, is a United States citizen and a resident of the City, County and State of New York.

5. Defendant Bill de Blasio is the Mayor of the City of New York (the "City"), a municipal corporation duly constituted under the laws of New York State. Defendant de Blasio is being sued only is his official capacity as Mayor of the City.

6. Defendant William Bratton is the Commissioner of the New York Police Department ("NYPD").  He is being sued  in his official capacity as NYPD Commissioner.

7.  Defendant Detective Jackson  (first name unknown to plaintiff) upon information and belief is a detective in the NYPD computer crimes unit.  Defendant Jackson is being sued individually and in his official capacity as a member of the NYPD.

8.  Defendants Detectives Jane and John Doe 1-20, names currently unknown to plaintiff, are detectives in the NYPD who participated in the actions plaintiff complains of herein.  These

2

defendants are being sued individually and in their official capacities as members of the NYPD.

9.   Defendants Officers Jane and John Doe 1-20, full names currently unknown to

plaintiff, are officers in the NYPD who participated in the actions plaintiff complains of herein.

These defendants are being sued individually and in their official capacities as members of the

NYPD.

10.   Defendant Laura McNaughton is plaintiff's sister.  Upon information and belief she

is a Massachusetts resident living in the City of Worcester.

### FACTS

11.   Upon information and belief, plaintiff's sister Laura McNaughton has on numerous

occasions falsely accused plaintiff of being a pedophile.  The first time plaintiff is aware of this

happening was in the spring or early summer of 2007.  This slander caused plaintiff to lose a

portion of his extended family.  Plaintiff at that time cut all ties with his sister, and has had no

further contact with her, except that occasioned in 2013 and later by the ill health of their mother.

12.   Upon information and belief, plaintiff's sister repeated this slander to the police

department of the Town of Montclair, New Jersey ("Montclair"), approximately five years ago.

Plaintiff's mother lives in a boarding house for seniors in Montclair, and plaintiff grew up in

Montclair, and visits his mother almost every week.  Upon information and belief, as a direct

3

result of this slander plaintiff was placed under surveillance by the Montclair Police Department, and subjected to numerous incidents of "baiting", where an under aged girl is paraded before him while he is under surveillance in an attempt to elicit behavior that could subject him to arrest.

13. Also upon information and belief, a detective from the Montclair Police Department visited plaintiff's mother at her residence in Montclair. Plaintiff was informed of this visit by another resident living in the boarding house. Upon information and belief as a result of this visit, the health of plaintiff's 89 year old mother suffered greatly, and for weeks she lay in bed staring at the ceiling. Plaintiff was forced to hire a resident of the boarding house to ensure that she went to the dining room for meals and for basic care. As a result of his fear of further damaging his mother's health, plaintiff did nothing about his sister's slander. After about 18 months the "baiting" activity stopped.

14. In or about the summer of 2011, upon information and belief, plaintiff's sister again falsely accused him of being a pedophile, this time to either the New York Department of Parks or to the NYPD. The baiting activity resumed, this time in plaintiff's own neighborhood, and nearly every time plaintiff left his apartment there was some under age girl smiling at him, usually with a concerned parent lurking nearby.

15. In or about the fall of 2012, members of the NYPD started stalking behavior, where there would be a police car or patrolman around nearly every time plaintiff left his apartment.

4

16. In response to this behavior, on or about October 22, 2012, plaintiff sent requests for price quotes to four computer forensic specialists for scanning one of his computers. Plaintiff, who had an inaccurate conception of the information a computer retained, was intending to scan the computer and then turn it over to the NYPD, as evidence that he had no interest in children. Because of the cost involved, plaintiff abandoned this course of action, except as noted below.

17. In these requests, plaintiff noted that the NYPD had adopted an advocate's position and overstepped the bounds of professionalism. At the time plaintiff discovered that emails to and from his sister were missing, as set forth below, plaintiff also discovered that the four requests he had sent to the computer forensic specialists also were missing from his sent file. Upon information and belief they were deleted by the NYPD. However, the NYPD had made a mistake, and the responses of the specialists, which contained plaintiff's original requests, were still contained in plaintiff's Yahoo! received correspondence file.

18. On Christmas night, 2012, around 7 p.m., while plaintiff was returning home after visiting his mother in Montclair, he stopped at a Dunkin' Donuts on Fifth Avenue around 31st Street for a snack. Four NYPD officers followed plaintiff into the establishment. Upon information and belief, one of these officers took a knife or other sharp object and cut plaintiff's pants around the crotch area.

19. By mail on or about January 18, 2013, Plaintiff filed with the Civilian Complaint Review Board ("CCRB") a detailed complaint about this and prior police behavior and the

behavior of his sister.  In that complaint he stated "there exists significant documentary

evidence" of his sister's malice and he asked for a meeting with the police to discuss the matter.

On the following Tuesday, January 22, 2013, when plaintiff was returning home from his regular

weekly visit to his mother, he encountered numerous patrol cars.  On Wednesday, January 23,

2013, plaintiff called the CCRB and left a message about his complaint, but never received a

response.


20.  On Friday, January 25, 2013, plaintiff called the NYPD's computer crime unit to

discuss prior complaints he had filed with the national computer crime center regarding previous

hacking of his computer.  The person he spoke to identified himself as Detective Jackson.

Detective Jackson seemed to know who plaintiff was.  He twice stated "You have no evidence",

before plaintiff had mentioned the reason for his call.  After refusing to look into the previously

complained of hacking of plaintiff's computer, Detective Jackson also said there would be "no

meeting", although plaintiff had not asked for a meeting during their phone conversation.


21.  On Wednesday, January 30, 2013, after thinking about Detective Jackson's odd

behavior, plaintiff decided to check his Yahoo! email account to make sure that the emails to and

from his sister that he had planned to show the police were still there.  He discovered that most of

the emails he had planned to show the police were missing.


22.  On Thursday, January 31, 2013 plaintiff contacted Yahoo.  The technician he was

referred to confirmed that his computer had been and was still hacked.  The technician stated,

6

however, that it would be impossible to retrieve the lost emails. Upon information and belief, these emails were deleted by members of the NYPD, with the help of plaintiff's sister, in order to prevent plaintiff from substantiating the claims made in his CCRB complaint.

23. On April 2, 2013, in connection with correspondence with plaintiff's sister involving plaintiff's mother, plaintiff sent his sister an email wherein he states: "I got the impression when we talked that you thought there might be a reconciliation. There won't be, after everything you've done. I think the best way for us to function is as though we were two parents after a contentious divorce, who still have the welfare of their child to think about."

24. When plaintiff was drafting the complaint herein, he went to his Yahoo! mailbox in attempt to find that email. He was unable to do so. Several times in the past few months plaintiff has attempted to find that email, but he believes that the email and the thread it was contained in (also two emails from plaintiff's sister, upon information and belief) has been deleted by the NYPD. A few days ago, plaintiff was looking in his sent file and found his email there, although the responding email from his sister is still missing. Upon information and belief, these emails also were deleted by the NYPD, at the behest of plaintiff's sister.

25. Since plaintiff's conversation with Detective Jackson, there has been extensive stalking behavior by members of the NYPD, as well as extensive "baiting" behavior by members of the public. In addition, upon information and belief, members of the NYPD have continued to spread the slander that plaintiff is a pedophile to his neighbors and to members of the public,

including library staff at libraries plaintiff visits, although they know it is not true.

26.  On April 2, 2013, there was a police officer stationed in the entrance of the Mid-Manhattan Branch Library when plaintiff entered it.  Upon information and belief, this officer or other police officers informed the staff present that plaintiff was a pedophile. For the following two Tuesdays a police officer was stationed in the entrance of that library, although on April 16, 2013, the officer was stationed in the entrance only in the morning.  Upon information and belief, all this behavior was designed to intimidate plaintiff and to coerce him into not making an issue, judicially or otherwise, of the police behavior.

27.  Upon information and belief as a direct result of this police behavior, a security guard at the exit of the library with whom plaintiff had been friendly stopped speaking to plaintiff and glared at him whenever he passed.  One day when plaintiff was leaving the library, another security guard stationed at the library exit screamed at him "You've been here before today.  I'm watching you!"  At the time, it was plaintiff's habit to enter the library in the morning, drop off books he had read in the drop box in the front of the library, and then exit the library and continue along 40th Street to the Port Authority Bus Terminal, to catch a bus out to Montclair, New Jersey to visit his mother.  In the afternoon, plaintiff would enter the library on his way home, pick up new reading material, and then continue down Fifth Avenue to his home.

28.  After these incidents, as a precaution plaintiff decided to have his computers scanned, and he has paid two computer forensic specialists thousands of dollars to scan his

computers and to do certain investigations.

29.  In addition to the foregoing, upon information and belief the NYPD and others, probably the support staff of plaintiff's building, with whom plaintiff has a very antagonistic relationship, have illegally entered plaintiff's apartment and tampered with evidence in plaintiff's possession. In plaintiff's co-op the residents are required to give apartment keys to building management.

30.  Plaintiff had commissioned a report from Kessler International, 45 Rockefeller Plaza, 20th Floor, New York, New York, a computer forensic specialist, in an attempt to find some of the deleted emails.  The report from Kessler did not find the emails in their complete form, but did contain images of many pages of the plaintiff's Yahoo mail inbox listing email exchanges between plaintiff and his sister, contained in approximately five separate reports, with a table of contents.

31.  Plaintiff cursorily examined the reports, and then placed the computer disk that contained the report in a space in his bedroom dresser.  Some months later, when plaintiff attempted to have another look at the reports, the computer disk no longer contained the reports or the table of contents.  Upon information and belief, someone at the direction of the NYPD had removed the disk from its place in plaintiff's bedroom and deleted the information it contained.

32.  In response to the stationing of the police in the Mid-Manhattan Branch Library,

plaintiff on or about April 15, 2013 purchased a very cheap digital camera in order to take a picture of the policeman. Unfortunately for plaintiff, the policeman was not there on the afternoon of April 16, 2013, when plaintiff had the camera, had reviewed its instruction book, and was planning to take a picture. A few weeks later, plaintiff left the camera home because the policemen were no longer being stationed at the library. Plaintiff had left the camera with brand new batteries. When plaintiff looked a the camera the next day, the camera indicated the batteries were at half charge. This is consistent with someone inexperienced using the camera in an attempt to discover what it contained, and plaintiff believes this was done at the behest of the NYPD. Upon information and belief, there have been other unauthorized incursions into plaintiff's apartment and other significant violations of plaintiff's right to privacy, all involving the NYPD.

33. In addition to the foregoing, upon information and belief, the NYPD and others have been engaged in illegal monitoring of plaintiff's telephone conversations and his computer. On or about April 25, 2014, plaintiff telephoned from his home Lawson Legal Services, a process server, talked to Robert Lawson, and arranged for service of process upon the three named New York defendants herein.

34. On April 27, Plaintiff emailed Mr. Lawson about problems with accessing the Lawson Legal Services payment tab and at 2:13 p.m. on that day received a response which started "Good day Mr. Naughtiness." The bizarre behavior of this professional process server is also set forth in plaintiff's Affidavit in Response to the Court's Order to Show Cause, sworn to

May 21, 2014, previously filed with the Court, which affidavit is referred to, reiterated and

realleged herein as though fully set forth at length.  The behavior of Lawson Legal Services in

forwarding two defective sets of affidavits of service to the plaintiff, misstating the date the

originals would be mailed to the plaintiff, and  actually mailing the affidavits so that plaintiff

would not receive them until after May 13, 2014, which actions could well have resulted in

plaintiff's complaint being dismissed for failure to prosecute, upon information and belief were

caused by the republication of the slander that plaintiff was a pedophile by the NYPD to Robert

Lawson and were done in concert with the NYPD.


35.  In December of 2013 and January of 2014, plaintiff attempted to obtain the services

of someone to lift fingerprints that plaintiff believed were present in his apartment as a result of

illegal incursions.  Plaintiff was unable to do so, in one case having agreed on the telephone with

a detective agency upon a price of eighteen hundred dollars for the work, only to have plaintiff's

contact at the agency become consistently unavailable for plaintiff's numerous telephone calls,

until the secretary suggested that plaintiff find someone else, and in another case having a

detective, after failing to call plaintiff back,  tell plaintiff that his fingerprint expert said the

fingerprints were too old, when plaintiff had not told him the age of the fingerprints.  Upon

information and belief, all of these anomalous occurrences as well as others plaintiff has

experienced happened because the NYPD was illegally monitoring plaintiff's telephone and then

contacting the people involved.


36.  Upon information and belief, plaintiff's sister aided the police in these violations of

11

plaintiff's privacy and civil rights and personally engaged in an unauthorized search of plaintiff's documents and belongings.

37.  As a result of this behavior on the part of plaintiff's sister and the police, plaintiff's reputation has been severely damaged, his constitutional rights have been violated, and he has suffered fear and emotional distress.  These violations are continuing, as is the damage to plaintiff's reputation.

AS AND FOR A FIRST CAUSE OF ACTION
AGAINST ALL DEFENDANTS

38.  The foregoing paragraphs one through thirty-seven are repeated, reiterated, realleged and incorporated herein as though fully set forth at length.

39.  The actions of the defendants named herein were designed and did deprive plaintiff of his rights under the Constitution of the United States to be free from unreasonable search and seizure, to express his thoughts without retaliation, and his rights to privacy and to due process.

40.  With the exception of defendants Bill de Blasio and William Bratton, defendants were acting intentionally with actual malice or, at the least, with a reckless disregard for the consequences of their actions.

12

41.  Defendants Bill de Blasio, William Bratton, in their official capacities, and the New York Police Department and City of New York (the "City") are liable for the plaintiff's constitutional deprivations since these deprivations upon information and belief resulted from established customs, policies and procedures of the City and the New York Police Department. In addition, the large number of police officers involved mandates a finding of attribution to the NYPD and the City.  Further, upon information and belief, these deprivations were the result of the failure of the City and NYPD to properly train and supervise its employees.

AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANTS LAURA McNAUGHTON,
DETECTIVES JANE AND JOHN DOE 1-20, AND
OFFICERS JANE AND JOHN DOE 1-20

42.  The foregoing paragraphs one through forty-one are repeated, reiterated, realleged and incorporated herein as though fully set forth at length.

43.  Upon information and belief, defendants Laura McNaughton, detectives Jane and John Doe 1-20, individually, and Officers Jane and John Doe 1-20, individually, published and republished through others repeatedly in New York State and elsewhere in the past year the false

13

slander that plaintiff was a pedophile.  All these defendants knew or should have known that this slander was untrue.

44.  Defendants were acting intentionally with actual malice or, at the least, with a reckless disregard for the consequences of their action.

45.  Plaintiff's reputation was severely damaged as a result of these defendants' slander.

**JURY DEMAND**

46.  Plaintiff demands a jury for the trial of this action.

WHEREFORE, plaintiff prays for relief awarding plaintiff damages on the FIRST and SECOND causes of action, in the following amounts:

Against defendant Laura McNaughton, $1,000,000 in compensatory damages and $2,000,000 in punitive damages;

Against defendant Detective Jackson, $100,000 individually and in his official capacity and, individually, $200,000 in punitive damages;

14

Against defendants Detectives Jane and John Doe 1-20, individually and in their official capacity, $10,000 each in compensatory damages and, individually, $50,000 in punitive damages;

Against Officers Jane and John Doe 1-20, individually and in their official capacity, $5,000 each in compensatory damages and, individually, $20,000 in punitive damages;

Against defendants Bill de Blasio and William Bratton, in their official capacities, and against the City of New York and the New York Police Department, $10,000,000 in compensatory damages;

together with reasonable attorneys' fees, as appropriate, and the costs and disbursements of this action; and such other and further relief as this Court deems just and proper.

Dated: June 3, 2014

_____
NEIL McNAUGHTON

Plaintiff
10 West 15th Street, Suite 418
New York, New York 10011
(212) 675-1110

15

VERIFICATION

State of New York, County of New York ss.:

NEIL McNAUGHTON, being duly sworn, deposes and says:

I am the plaintiff in the within action; I have read the foregoing and read the contents

thereof; the same is true to my own knowledge, except as to the matters therein stated to be

alleged on information and belief, and as to those matters I believe them to be true.

Dated: New York, New York
       June 3, 2014

_____
NEIL McNAUGHTON

Sworn to before me this
   3   Day of June, 2014

_____
NOTARY PUBLIC

**SAMUEL TEJADA**
Notary Public, State of New York
No. 01TE6191307
Qualified in New York County
Commission Expires Aug. 11, 20_16_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

*(List the name(s) of the plaintiff(s)/petitioner(s).)*

Neil McNaughton

- against -

Bill de Blasio, et. al.

_____

_____

*(List the name(s) of the defendant(s)/respondent(s).)*

14 Civ. 221    (KMB)(RLD)

**AFFIRMATION OF SERVICE**

I, *(print your name)* Neil McNaughton ____, declare under penalty of perjury that I

served a copy of the attached *(list the names of the documents you served):* Amended

Verified Complaint

_____

upon all other parties in this case by *(state how you served the documents, for example, hand delivery,*

*mail, overnight express)* mail + filing with pro se intake unit to the

following persons *(list the names and addresses of the people you served):* Laura McNaughton

251 Bridge Pkwy Unrock NYC

_____

on *(date you served the document(s))* mailed 6/3/14.

6/4/14
**Dated**

_____
**Signature**
10 w. 15st St. Ste. 418
**Address**
NY NY
**City, State**
10011
**Zip**
212 675-1410
**Telephone Number**
n/a
**E-Mail Address**

*Rev. 01/2013*